J-S39008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MIGUEL A. TORRES | |
| Appellant | No. 625 MDA 2015 |

Appeal from the Judgment of Sentence Entered March 9, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0000183-2014

BEFORE:  STABILE, PLATT,[*] and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 21, 2016**

Appellant, Miguel A. Torres, appeals from the March 9, 2015 judgment of sentence imposing life in prison without the possibility of parole for the murder of his wife, Barbara Torres.  We affirm.

The murder occurred on September 12, 2005 in the parking lot behind the Wachovia Bank branch in Reading, Pennsylvania, where the victim and Josefa Delosreyes ("Delosreyes") worked together at adjacent teller desks.  N.T. Trial, 1/26/2015–2/2/2015, at 70-72.  Delosreyes and the victim were conversing on their way to their parked vehicles after completing their work for the day.  *Id.* at 78.  The victim's vehicle was a white Cadillac Escalade registered to Appellant and the victim.  *Id.* at 755.  Shortly after Delosreyes

_____

[*] Retired Senior Judge assigned to the Superior Court.

and the victim parted to walk to their respective vehicles, Delosreyes heard the victim scream, "Mikey." *Id.* at 79-80. Delosreyes heard one gunshot and then observed, in her rearview mirror, the victim attempting to flee. *Id.* at 80-81. Instead, the victim fell, and Delosreyes observed Appellant standing and firing a second shot at close range at the victim's head. *Id.* at 82. Delosreyes was acquainted with Appellant, as she had Christmas dinner with Appellant and the victim in 2004. *Id.* at 73, 100-01. Delosreyes also saw Appellant two weeks before the murder. *Id.* at 73. Appellant departed from the scene in the Torres' Escalade. *Id.* at 83.

Police found the Escalade parked several blocks from the scene of the murder. *Id.* at 286. Inside the vehicle was a nine-millimeter handgun Appellant purchased in 1998. *Id.* at 758. Forensics testing revealed that bullet casings found at the scene were fired from that gun. *Id.* at 350. The Escalade's driver's side door and running board were stained with blood. *Id.* at 287-88, 300.

Earlier on the day of the murder, Appellant rented a conversion van with a sleeper in it. *Id.* at 534-43. Appellant never returned the van to the rental car company. *Id.* at 544. Authorities later found the van abandoned at LaGuardia Airport in New York. *Id.* Appellant fled to the Dominican Republic, where he remained until 2010. *Id.* at 940-41. In 2010, he moved from the Dominican Republic to Italy. *Id.* According to a Dominican Republic passport and a Dominican Republic voter identification card,

Appellant assumed the name "Rene Rondon." *Id.* at 754-56. Italian authorities apprehended Appellant in March of 2013. *Id.* at 749-50. A Berks County Assistant District Attorney and several United States Marshals traveled to Italy and took custody of Appellant in November of 2013. *Id.* In between the crime and Appellant's apprehension, Appellant underwent plastic surgery to change his fingerprints. *Id.* at 802-03, 938-40. Appellant also had his nose altered by plastic surgery, and lost significant weight. *Id.* at 74, 938-40.

On February 2, 2015, after a lengthy trial, a jury found Appellant guilty of first and third degree murder, aggravated assault, and related offenses. On December 17, 2015, the trial court sentenced Appellant to life in prison without the possibility of parole. This timely appeal followed. Appellant raises five questions for our review:

1. Whether the trial court erred and/or committed an abuse of discretion depriving [Appellant] of his right to due process, his rights under the Confrontation Clause, and/or to a fair trial by granting the Commonwealths' Motion in *Limine*, allowing the Commonwealth to introduce hearsay evidence of alleged incidences of domestic abuse or violence through several witnesses that were extremely prejudicial, outweighed by any probative value and should not have been admitted and furthermore the evidence presented at trial exceeded side bar proffers and the proposed evidence contained in the Commonwealth's Motion in *Limine*?

2. Whether the trial court erred and/or committed an abuse of discretion depriving [Appellant] of his right to due process, his rights under the Confrontation Clause, and/or to a fair trial by allowing the Commonwealth to introduce the contents of a PFA Petition that was not written by the alleged victim, but in fact by the alleged victim's sister concerning alleged

incidences of domestic abuse or violence that the witness had no firsthand knowledge of, was the product of hearsay and/or were extremely prejudicial, outweighed by any probative value and should not have been admitted?

3. Whether [Appellant] was denied a fair trial by the trial court allowing the Commonwealth to rehabilitate it's [sic] witness, Eugene Deren, who identified the prosecuting police officer as the person who committed the murder, by further directing the Commonwealth to pull up Exhibit #26 (a picture of [Appellant]) again and facilitating a tainted in court misidentification thereby warranting a new trial?

4. Whether the verdict was against the weight of the evidence presented by the Commonwealth in their case in chief and was insufficient as a matter of law to establish [Appellant's] guilt beyond a reasonable doubt, given the extremely contradictory, inconsistent, biased and patently unreliable testimony of the Commonwealth witnesses who had a vested interest in the outcome of the trial, failed to identify [Appellant] as the shooter, and/or established facts that [Appellant] could not be the shooter, thereby warranting a judgment of acquittal and/or new trial.

5. Whether the trial court erred and/or committed an abuse of discretion depriving [Appellant] of his right to due process, his rights under the Confrontation Clause, and/or to a fair trial by granting the Commonwealths' Motion in *Limine*, allowing the Commonwealth to introduce hearsay evidence of alleged incidences of domestic abuse or violence through Josefa Delosreyes that were extremely prejudicial, outweighed by any probative value and should not have been admitted.

Appellant's Brief at 7-8.

In his brief, Appellant analyzes issues one, two, and five together. We will do the same. Each of these issues challenges the admission of evidence. Admission of evidence rests within the sound discretion of the trial court, and we will not reverse absent an abuse of discretion. **Commonwealth v. Flor**, 998 A.2d 606, 623 (Pa. 2010), *cert. denied*, 563 U.S. 941 (2011).

"[A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." **Id.** at 620.

Several deficiencies in Appellant's brief hamper our review of this issue. Appellant's questions presented pertain to a PFA petition the victim's sister helped her fill out, Delosreyes' testimony, and other hearsay evidence. Appellant cites the Commonwealth's motion in *limine*, but he does not develop any legal argument pertaining to any item in that motion. Appellant's Brief at 9. Appellant simply states that a "review of the Reproduced Record in the case at bar, clearly establishes the improper admission of evidence regarding [Appellant's] alleged tumultuous relationship with Barbara Torres." Appellant's Brief at 19. Appellant limits his legal argument to basic principles of evidence admissibility. Appellants' Brief at 17-18.[1] Appellant does not address the relevance, probative value, or potential unfair prejudice of any specific evidence.

_____

[1] The Commonwealth argues the victim's statements were admissible under the forfeiture by wrongdoing doctrine, citing **Giles v. California**, 554 U.S. 353 (2008). The trial court relied in part on **Crawford v. Washington**, 541 U.S. 36 (2004), wherein the Supreme Court held that the Confrontation Clause prohibits admission of testimonial hearsay from an unavailable witness. Appellant does not cite either case or develop any argument regarding these doctrines.

The Pennsylvania Rules of Appellate Procedure require appellants to support their arguments with citations to pertinent legal authority and pertinent portions of the record. Pa.R.A.P. 2119(b) and (c). Failure to do so results in waiver. ***Commonwealth v. Williams***, 959 A.2d 1252, 1258 (Pa. Super. 2008).

> The court will not become the counsel for an appellant, and will not, therefore, consider issues ... which are not fully developed in his brief. Failing to provide factual background and citation to the record represent[s] serious deviations from the briefing requirements of the Rules of Appellate Procedure. Because such an omission impedes on our ability to address the issue on appeal, an issue that is not properly briefed in this manner is considered waived.

***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006) (internal citations and quotation marks omitted). Appellant's failure to cite legal authority and record citations pertinent to any specific evidence renders his claim unreviewable and waived.

Appellant's third argument is that the trial court erred in permitting the Commonwealth to rehabilitate eyewitness Eugene Deren ("Deren") after Deren failed to identify Appellant at trial. The record reflects the following:

> [Prosecutor]: Sir, the person you saw holding the woman and holding the gun and the person who drove the Escalade away, was that the same person or a different person?
>
> [Deren]: Same person.
>
> [Prosecutor]: Do you see that person in the courtroom today?
>
> [Deren]: Do you want me to just walk over to him? Yeah, right here.

[Prosecutor]:  This individual here?

[Deren]:  Yeah.

[Prosecutor]:  Let me show you Commonwealth Exhibit No. 26, sir.

[Defense counsel]:  Objection , Your Honor, of him trying to rehabilitate his own witness.

[Prosecutor]:  Well, Judge, under the law you're allowed to do that, and it's certainly not redundant.

The Court:  Overruled.

[Prosecutor]:  The person in this photo, do you recognize that person?

[Deren]:  That's the person I really saw.  It's a better picture of what I saw, without the glasses, you know, the more body filled up, a little more firm in the face.

N.T. Trial, 1/26/2015–2/2/2015, at 181.  Thus, Deren initially identified the prosecuting police officer as the defendant, and then identified Appellant from a photograph introduced as Commonwealth Exhibit 26.  Deren later claimed his eyes were watery when he identified the police officer rather than Appellant.  *Id.* at 184-85.  On cross-examination, Deren simply said he was mistaken.  *Id.* at 186.

Once again, Appellant cites no law in support of his argument, resulting in waiver under Pa.R.A.P. 2119(b).  Appellant seemingly concedes that the Commonwealth was entitled to refresh Deren's recollection as to his prior identification of Appellant (**see** Appellant's Brief at 19), but Appellant argues that the prior identification was tainted because Deren identified

Appellant only after observing Appellant's picture in a newspaper. The record does not support Appellant's contention:

> [Defense Counsel]: Mr. Deren, you don't know who the gunman was? You only read something in the newspaper and that's who you believe it is?
>
> [Deren]: No, I was there. I saw what happened. I saw who was there with a gun. [Appellant] is the person with the gun (indicating). I saw him holding the woman.

N.T. Trial, 1/26/2015–2/2/2015, at 197.

Furthermore, any trial court error was harmless beyond a reasonable doubt.[2] The record evidence in support of Appellant's guilt is overwhelming. As summarized above, the record indicates that Delosreyes knew Appellant and the victim and identified Appellant without any doubt. Furthermore, the record contains ballistics evidence matching the shell casings to Appellant's gun. The record also contains evidence that Appellant rented a conversion van on the morning of the murder. That van was later abandoned at LaGuardia Airport. Appellant fled the United States for eight years, living in the Dominican Republic and then Italy. During that time, he changed his appearance by losing considerable weight and having plastic surgery on his nose. Deren did not know Appellant prior to the murder, and Deren

---

[2] "A harmless error analysis requires a determination by the appellate court that the uncontradicted evidence of guilt is so overwhelming and that the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error is harmless." ***Commonwealth v. Rasheed***, 640 A.2d 896, 899 (Pa. 1994).

observed Appellant for several seconds. At the time of trial, Deren had not seen Appellant for eight years, during which time Appellant altered his appearance through plastic surgery to his nose and significant weight loss. Appellant's third argument does not merit relief.

Finally, we must consider Appellant's challenges to the weight and sufficiency of the evidence. Appellant offers overlapping arguments on these doctrines. As we have often explained, a challenge to the sufficiency of the evidence is distinct from a challenge to the weight of the evidence:

> The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a

mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)). When the trial court denies a motion for a new trial based on weight of the evidence, we review the trial court's decision for abuse of discretion. *Commonwealth v. Rivera*, 983 A.2d 1211,1225 (Pa. 2009).

Once again, Appellant's brief is very short on specifics. He argues that the Commonwealth's witnesses were "contradictory, inconsistent, and biased" without explaining the basis for these assertions. He also does not explain which element or elements of his convictions the Commonwealth failed to prove. Appellant's Brief at 20-22. As we already have explained, Delosreyes' eyewitness account, Deren's eyewitness account, the ballistics evidence, and Appellant's subsequent flight are more than sufficient to sustain his murder conviction. Concerning the weight of the evidence, Deren's misidentification at trial and other minor inconsistencies in the evidence do not support a conclusion that the trial court abused its discretion in denying Appellant a new trial.

Since appellant has failed to present any meritorious arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016